# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA K. SALTER, | 1:12-CV-01852-LJO-SAB |
| Plaintiff, | **ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | (Doc. 25) |
| CARLOS HERNANDEZ, BETTY RODRIGUEZ, RUSS PETTIS, and DOES 1-25, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Linda K. Salter ("Salter") has brought suit against Defendants Carlos Hernandez, Betty Rodriguez, and Russ Pettis (collectively "Defendants") for violations of due process and the fourth amendment under 42 U.S.C. § 1983 and for various state claims. Defendants timely removed this action to this Court from Madera County Superior Court. This Court granted in part Defendants' motion to dismiss Salter's original complaint and ordered Salter to either file an amended complaint or agree to dismissal of her federal claims. Salter filed an amended complaint. Now pending before the Court is Defendants' motion to dismiss Salter's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Salter opposed the motion, and Defendants have filed a reply. Upon careful consideration of the parties' arguments, the Court DISMISSES in part Salter's complaint and REMANDS this action to Madera County Superior Court.

## BACKGROUND

**A. Facts**

Salter worked as a Correction Counselor for the California Department of Corrections and Rehabilitation ("CDCR") from 1990 until 2008 and again from 2011 until her retirement in 2012. At

1

the relevant times during her employment, Salter worked at the Valley State Prison for Women ("VSPW"). Salter alleges that she was injured on the job on August 27, 2003, when she fell while pushing her file cart. Salter alleges that Hernandez, a Correction Counselor II at VSPW and Salter's direct supervisor, failed to timely complete an accident/injury report despite being notified that he needed to complete the report and advising Salter that he would complete the report. Hernandez completed the report on September 2, 2003.

Salter visited Rodriguez, a Return to Work Coordinator at VSPW, to request to see a doctor on September 15, 2003 for the August 27, 2003 accident. On September 15, Rodriguez filled out a form to document Salter's visit and checked the box on the form stating that "The facts do not indicate this claim of injury was work related." Salter alleges Rodriguez claimed to be suspicious of Salter because Salter did not report the August 27, 2003 accident until September 2, 2003, which was when Hernandez completed the report on Salter's accident.

On September 19, 2003, Salter saw Dr. Allen T. Nassar. Dr. Nassar diagnosed Salter with neck and back strain and later instructed her not to use her left arm. Salter alleges no accommodations were made for her at work other than having someone else push her file cart in late October 2003. Salter was removed from work after Rodriguez stated that VSPW could make no further accommodations for Salter.

Salter alleges that, in November 2003, Rodriguez notified a California Public Employees' Retirement System ("Cal-Pers") investigator that Salter would soon file a fraudulent claim. Salter further alleges Rodriguez notified the California State Compensation Insurance Fund ("State Fund") that Rodriguez was suspicious of Salter because Salter waited to see a doctor for her injuries from the August 27, 2003 accident. Cal-Pers and the State Fund each conducted surveillance on and investigated Salter. The State Fund declined to prosecute her in November 2004. Salter alleges that Hernandez and Rodriguez also caused the California Department of Insurance ("CDI") to conduct surveillance on Salter.

Salter applied for retirement at the direction of Rodriguez on February 13, 2004. On August 15, 2005, Cal-Pers notified Salter that it was denying her request for Industrial Disability Retirement benefits. In November 2005, an agreed medical examiner found Salter to be temporarily totally

2

disabled and then permanent and stationary. Salter appealed the denial of benefits, and the Cal-Pers held a hearing on Salter's disability retirement appeal on April 30, 2007. The denial of Salter's retirement was affirmed on May 25, 2007.

In August 2007, Salter was arrested by Pettis and charged with fourteen felony counts of fraud and theft related to her injury. Salter's employment with VSPW was terminated on April 21, 2008.

Salter alleges that, in February 2009, two doctors diagnosed Salter with conditions related to depression and anxiety. Salter alleges that Defendants' conduct caused her depression and anxiety and prevented earlier diagnoses of her conditions.

In January 2011, the charges against Salter were dismissed. Salter's employment with VSPW was reinstated in February 2011.

Salter received clearance for disability retirement in May 2012. Salter's worker's compensation claim has been settled.

**B.  Procedural History**

Salter filed a complaint on October 5, 2012 in Madera County Superior Court alleging sixteen causes of action – four related to the United States Constitution and federal statutes and twelve were based on the California Constitution and California law. On November 5, 2012, Defendants timely removed this action to federal court on the basis of federal question jurisdiction for the causes of action related to federal law and supplemental jurisdiction over the state law causes of action. On February 14, 2013, this Court granted in part Defendants' motion to dismiss Salter's original complaint. This Court ordered Salter to either file an amended complaint or agree to dismissal of her federal claims.

On February 21, 2013, Salter filed a first amended complaint. Defendants filed the instant motion to dismiss Salter's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on March 8, 2013. Salter filed an opposition on May 21, 2013, and Defendants filed a reply on May 24, 2013.

**DISCUSSION**

**Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)**

**A.  Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is

either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions...amount[ing] to nothing more than a 'formulaic recitation of the elements'...are not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (internal citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car*

*Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (internal citations omitted).

With these standards in mind, this Court turns to Defendants' challenges to the allegations in Salter's complaint.

**B.    Federal Causes of Action under 42 U.S.C. § 1983**

Salter's federal causes of action in her amended complaint echo those in her original complaint.  Salter claims that Defendants acted under color of law when they deprived Salter of her Constitutional rights in violation of 42 U.S.C. § 1983.  In particular, Salter once again alleges that: 1) Defendants deprived her of liberty and property without due process of law in violation of the fifth and fourteenth amendments of the United States Constitution, 2) Defendants' actions were outrageous and shocking to the conscience in violation of the fifth and fourteenth amendments; and 3) Defendants violated her fourth amendment right to be free from unreasonable seizure.

Defendants argue that Salter fails to allege sufficient facts to state claims under Fed. R. Civ. P. 12(b)(6).  Defendants also argue that suit against Hernandez, Rodriquez, and Pettis in their official capacities is barred by the eleventh amendment.  Defendants further argue that Salter's fifth amendment claims fail because none of the Defendants is a federal actor and that Pettis is entitled to qualified immunity.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628, 632–633 (9th Cir.1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)).  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution."  *Carey v. Piphus*, 435 U.S. 247, 253 (1978) (quoting *Imbler v.*

5

*Pachtman*, 424 U.S. 409, 417 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146.

Salter alleges and Defendants do not contest that Defendants acted under color of state law. As such, attention turns to whether and how Defendants deprived Salter of a constitutional right.

### 1.   Procedural Due Process – 42 U.S.C. § 1983

In her first cause of action, Salter alleges the Defendants "deprived Plaintiff of liberty and property without due process of law in violation of the fifth and fourteenth amendments to the United States Constitution" by "falsely and illegally initiating the various administrative and legal proceedings against Plaintiff, and by making dishonest and misleading statements about Plaintiff at said proceedings[.]"[1]

"To establish a violation of procedural due process, a plaintiff must demonstrate: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).

According to Salter, Defendants' "deceitful, manipulative, and false" actions caused her to be denied pay and retirement benefits and notary and real estate licenses, to pay large attorneys' fees, to be subject to false and illegal criminal proceedings, and to suffer various health problems. Defendants do not dispute that Salter had a significant liberty or property interest deserving of constitutional protection in at least some of these items. *Board of Regents v. Roth*, 408 U.S. 564, 571-72 (1972) ("[P]roperty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.").

The above claims and allegations largely follow Salter's original complaint. In its order on

---

[1] Defendants argue that Salter cannot bring a fifth amendment due process claim against Defendants because they are not federal actors. Salter only defends her fourteenth amendment procedural due process claim in her opposition. The Court construes this as Salter's voluntary dismissal of her fifth amendment procedural due process claim.

6

Defendants' motion to dismiss Salter's original complaint, this Court found that Salter failed to allege how the state or its agents deprived Salter of her protected interests. Salter attempted to cure this deficiency in her amended complaint by making somewhat lengthier allegations to link her alleged deprivations to Defendants' conduct. However, even assuming Salter is able to establish some deprivation traceable to Defendants' conduct, she still fails to allege facts to show that the deprivation occurred without due process of law. *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985). An alleged wrong result is not the same as a due process violation.

"The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Brewster*, 149 F.3d at 984 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The timing of the hearing – whether it must be before or instead may be after the alleged property deprivation – is a function of the balancing test outlined by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Id*.

Salter makes at most piecemeal allegations as to the process that was provided. Salter alleges that Cal-Pers held a hearing on Salter's disability retirement appeal on April 30, 2007 at which Hernandez testified. Salter also alleges that the Office of Internal Affairs conducted a taped interview of Rodriguez on January 26, 2007, and that Rodriguez was deposed on April 24, 2008. However, it remains unclear whether these occurred before or after Salter's alleged property deprivation. Moreover, Salter makes no allegations as to whether she was allowed to attend these proceedings or whether she was interviewed or allowed to submit testimony or evidence at any point during the proceedings. In fact, Salter makes no allegations at all as to her participation in the proceedings other than stating that she applied for disability retirement and appealed the denial of benefits.

Salter alleges that, after her arrest, a preliminary hearing was held as to her fraud charges and that Pettis and Rodriguez testified. Also, at some point, Pettis interviewed Hernandez and Rodriguez. Salter makes no allegations as to whether she was allowed to testify or submit evidence at her preliminary hearing or whether the hearing was timely.

Therefore, Salter failed to allege sufficient facts to show that she suffered a deprivation of a constitutionally protected interest without being given an opportunity to be heard at a meaningful time

and in a meaningful manner. *Brewster*, 149 F.3d at 984 (quoting *Armstrong*, 380 U.S. at 552).

Because the complaint still does not allege a state deprivation of a constitutionally protected interest in liberty or property for which inadequate procedural protections were provided, Salter has again failed to state a claim for denial of procedural due process under the fourteenth amendment. Salter's first cause of action under 42 U.S.C. § 1983 for violation of procedural due process against Defendants is DISMISSED.

**2.     Substantive Due Process – 42 U.S.C. § 1983**

In her second cause of action, Salter alleges that Defendants' conduct was "outrageous and shocking to the conscience, in violation of Plaintiffs'[sic] substantive due process right to personal security as guaranteed by the fifth and fourteenth amendment of the United States Constitution."[2]

"Substantive due process protects individuals from arbitrary deprivation of their liberty by the government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998)). "Substantive due process is ordinarily reserved for those rights that are 'fundamental.'" *Id*. at 990 (citing *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997)). In *Glucksberg*, the Supreme Court set forth the two elements of the substantive due process analysis. 521 U.S. at 720–21. First, "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed[.]" *Id*. (internal quotations and citations omitted). Second, the Supreme Court requires "a careful description of the asserted fundamental liberty interest." *Id*. (internal quotations and citations omitted). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). The Supreme Court has instructed courts against expanding the substantive reach of the fourteenth amendment, "particularly if it requires redefining the category of rights deemed to be fundamental." *Bowers v. Hardwick*, 478 U.S. 186, 195 (1986), *overruled on other grounds*, *Lawrence*

---

[2] As with Salter's procedural due process claim, Salter only defends her fourteenth amendment substantive due process claim following Defendants' challenge to her ability to bring fifth amendment due process claims against them. The Court likewise construes this as Salter's voluntary dismissal of her fifth amendment substantive due process claim against Defendants.

*v. Texas*, 539 U.S. 558 (2003).

Salter alleges that Defendants' conduct in "falsely initiating the various administrative and legal proceedings against Plaintiff, and by making dishonest and misleading statements about Plaintiff at said proceedings" violates her "substantive due process right to personal security." As discussed above, "[s]ubstantive due process requires a 'careful description of the asserted fundamental liberty interest.'" *Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir. 2007) (quoting *Glucksberg*, 521 U.S. at 721). Additionally, the Supreme Court has instructed courts to carefully and narrowly construe the interest at stake: "[W]e have a tradition of carefully formulating the interest at stake in substantive-due-process cases." *Glucksberg*, 521 U.S. at 722. Salter's articulation of her asserted liberty interest cannot be more vague. Salter fails to define in any way the purported fundamental interest in "personal security" including what it protects or where its boundaries lie. The Court cannot reasonably, let alone carefully or narrowly, construe the liberty interest asserted by Salter. *See*, *Reno v. Flores*, 507 U.S. 292, 302 (1993) (noting that the asserted liberty interest must be construed narrowly to avoid unintended consequences). Therefore, Salter fails to show deprivation of a fundamental liberty interest as required for a substantive due process claim. *Brittain*, 451 F.3d at 990.

Because the amended complaint fails to allege a fundamental liberty interest subject to state deprivation, Salter again has failed to state a claim for denial of substantive due process under the fourteenth amendment. Salter's second cause of action under 42 U.S.C. § 1983 for violation of substantive due process against Defendants is DISMISSED.

**3.   Unreasonable Seizure – 42 U.S.C. § 1983**

In the Salter's third cause of action, she alleges that Defendants' conduct violated her "right to be free from unreasonable seizures (false arrest) as guaranteed by the fourth amendment to the United States Constitution."

**a.   Pettis**

Salter alleges that Pettis executed her arrest "without reasonable or probable cause."

"[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)). "Arrest by police officers without probable cause violates the fourth amendment's guarantee

9

of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983." *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992) (citing *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)). Specific intent is not required to establish a violation of the fourth amendment. *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 397-98 (1989)). "Rather, 'the question is whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Id*. (quoting *Graham*, 490 U.S. at 397). As the Ninth Circuit stated in paraphrasing *Graham*, "An officer's evil intentions will not make a fourth amendment violation out of an objectively reasonable [arrest]; nor will an officer's good intentions make an objectively unreasonable [arrest] constitutional." *Id*. (citing *Graham*, 490 U.S. at 397).

Salter was arrested by Pettis and charged with fourteen felony counts of fraud and theft related to her alleged injuries. Those charges were later dismissed. Salter alleges that Pettis arrested her "without probable cause." Specifically, she alleges that Pettis interviewed Hernandez and Rodriguez and that Hernandez and Rodriguez made false statements to Pettis. Salter further alleges that Pettis "belie[ved] that Plaintiff was not injured" and that "[h]e rests this mistaken belief on the false statements made by Hernandez and Rodriguez during their interviews with Pettis."

The objective circumstances Pettis confronted regarding Salter were that Salter's direct supervisor and return to work coordinator both made statements during interviews that led to a "belief that Plaintiff was not injured." Salter does not allege that Pettis failed to conduct an independent investigation into the bases of Hernandez' and Rodriguez' statements. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991). Salter also makes no allegations as to whether she was prevented from telling Pettis her side of the story or whether Pettis was able to obtain statements or evidence contradicting Hernandez and Rodrigeuz's statements. Further, Salter does not allege that Pettis lacked a warrant for her arrest or that the warrant was defective. Therefore, Salter fails to show that Pettis objectively lacked probable cause for her arrest. *See*, *Graham*, 490 U.S. at 397. Whether Pettis' underlying intent was indeed to harm Salter, as Salter emphatically alleges, is irrelevant. *Id*.

      **a.**     **Hernandez and Rodriguez**

In her amended complaint, Salter also alleges that Hernandez and Rodriguez violated her

right to be free from unreasonable seizure by making false statements including during their interviews with Pettis that "resulted in Plaintiff's arrest and prosecution without probable cause."

In the Ninth Circuit, the conduct of a non-law enforcement governmental party is subject to the fourth amendment "only when he or she has formed the necessary intent to assist in the government's investigative or administrative functions; in other words, when he or she intends to engage in a search or seizure." *United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990). "However, under this test, the fourth amendment will not apply when the private party was acting for a reason that is independent of such a governmental purpose." *Id*. Salter repeatedly and emphatically alleges that Hernandez and Rodriguez made false statements about her "with malicious intent" "to harm Plaintiff" and "to retaliate against Plaintiff for her claims of sexual harassed[sic] against [Hernandez]." According to Salter's allegations, Hernandez and Rodriguez acted in furtherance of their own independent interests. Their conduct was not "designed to elicit a benefit for the government." *Id*. at 1430. Therefore, Salter fails to show that the conduct of Hernandez and Rodriguez is subject to the fourth amendment.

In her opposition to Defendants' motion to dismiss, Salter alleges for the first time that "Defendants specifically intended to get Plaintiff arrested[.]" However, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (emphasis in the original). *See also*, 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."). "The focus of any Rule 12(b)(6) dismissal-both in the trial court and on appeal-is the complaint." *Id*. Therefore, the Court declines to consider any new allegations made in Salter's opposition at this time.

Because the complaint fails to allege sufficient facts to show that Pettis subjected Salter to an unconstitutional seizure or that Hernandez and Rodriguez were subject to the fourth amendment, Salter again has failed to state a claim for unreasonable seizure in violation of the fourth amendment. Salter's third cause of action under 42 U.S.C. § 1983 for violation of the fourth amendment is DISMISSED.

11

**C.    Jurisdiction**

Defendants removed this action from Madera County Superior Court because the complaint contained claims brought under a federal statute, 42 U.S.C. § 1983, for violations of the United States Constitution.  None of those claims in Salter's original complaint survived Defendants' Fed. R. Civ. P. 12(b)(6) challenge.  The Court extended to Salter one opportunity to attempt to cure the deficiencies in her federal claims in an amended complaint.  Salter has failed to do so.  Therefore, as explained in the order on Defendant's motion to dismiss Salter's original complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. 1367(c), and remands this action to state court for further proceedings.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES the complaint's first, second, and third causes of action under 42 U.S.C. § 1983 for violations of federal due process and the fourth amendment's protection against unreasonable seizure;

2. REMANDS this action to Madera County Superior Court for further proceedings; and

3. ORDERS the Clerk of Court to close this case.

IT IS SO ORDERED.

Dated:   **June 14, 2013**                    **/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE